UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

ELIZABETH BRANDENBURG a/k/a
MOTHER FOTEINI, MARIA KALLIS a/k/a
SISTER THEONYMPHI,

                Plaintiffs,

        -against-

GREEK ORTHODOX ARCHDIOCESE OF
NORTH AMERICA, GERASIMOS
MAKRIS a/k/a FATHER GERASIMOS
MAKRIS, DEMETRIOS TRAKATELLIS
a/k/a ARCHBISHOP DEMETRIOS, ALLEN
PAROPOULOS a/k/a BISHOP ANDONIOS,
AND CHARLENE ASQUITH a/k/a
MOTHER EISODIA,

                Defendants.

------------------------------------------------------- X

Civil Action No.: 1:20 Civ. 03809-JMF

The Hon. Jesse M. Furman

ECF CASE

**ORAL ARGUMENT REQUESTED**

---

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

---

Dated: New York, New York
      September 29, 2020

*Of Counsel and On the Brief:*
      Gerald L. Maatman, Jr.
      Karen Y. Bitar
      Lisa L. Savadjian

SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
*Attorneys for Defendants Greek Orthodox Archdiocese of North America, Gerasimos Makris*
*a/k/a Father Gerasimos Makris, Demetrios Trakatellis a/k/a Archbishop Demetrios, Allen*
*Paropoulos a/k/a Bishop Andonios, and Charlene Asquith a/k/a Mother Eisodia*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT.......................................................................................................................1

I.      THE MINISTERIAL EXCEPTION APPLIES TO THE EMPLOYMENT CLAIMS.......1

II.     PLAINTIFFS' SEXUAL HARASSMENT CLAIMS ARE TIME-BARRED..................4

III.    THERE IS NO DISCRIMINATORY IMPACT IN NEW YORK CITY .........................4

IV.     THE GENDER DISCRIMINATION CLAIM IS MERITLESS ......................................5

V.      PLAINTIFFS ARE NOT EMPLOYEES UNDER THE NYLL.......................................6

VI.     PLAINTIFFS DO NOT ESTABLISH DEFAMATION PER SE WITH MALICE ...........7

        A.      The Statements Are Privileged ............................................................................7

        B.      No Facts Support Actionable "Malice".................................................................9

VII.    THE COURT SHOULD NOT GRANT LEAVE TO AMEND AGAIN........................10

CONCLUSION...................................................................................................................11

65858240v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berger v. Temple Beth-El of Great Neck*,
    41 A.D.3d 626 (2007)...........................................................................................................10

*Brockman v. Frank*,
    149 Misc. 2d 399 (Sup. Ct. N.Y. Cty. 1991) ........................................................................7

*Capak v. Epps*,
    No. 18CV4325, 2020 WL 2543092 (S.D.N.Y. Apr. 7, 2020)...............................................11

*Demkovich v. St. Andrew the Apostle Par.*,
    No. 19-2142, 2020 WL 5105147 (7th Cir. Aug. 31, 2020) ....................................................2

*Dineen v. Stramka*,
    228 F.Supp.2d 447 (S.D.N.Y. 2002).......................................................................................6

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
    921 F.Supp.2d 197 (S.D.N.Y. 2013) ......................................................................................5

*Fleming v. Laakso*,
    No. 18-cv-1527, 2019 WL 959521 (S.D.N.Y. Feb. 5, 2019) .................................................9

*Fowles v. Bowen*,
    30 N.Y. 20 (1864) .................................................................................................................9

*Fratello v. Archdiocese of New York*,
    863 F.3d 190 (2d Cir. 2017) .........................................................................................3, 4, 6

*Glazier v. Harris*,
    159 A.D.3d 581 (2018).........................................................................................................8

*Grochowski v. Phoenix Constr.*,
    318 F.3d 80 (2d Cir. 2003) ..................................................................................................10

*Hoffman v. Parade Publications*
    15 N.Y.3d 285 (2010)...........................................................................................................5

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*,
    565 U.S. 171 (2012) .....................................................................................................*passim*

*iMedicor, Inc v. Access Pharm., Inc.*,
    290 F.R.D. 50 (S.D.N.Y. 2013) ...........................................................................................10

*Kantor v. Pavelchak*,
134 A.D.2d 352 (1987)........................................................................................8

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
496 F.3d 229 (2d Cir. 2007) ............................................................................10

*Levin v. McPhee*,
119 F.3d 189 (2d Cir. 1997) ..............................................................................9

*Liberman v. Gelstein*,
80 N.Y.2d 429 (1992)...............................................................................7, 8, 9

*Mihlovan v. Grozavu*,
72 N.Y.2d 506 (1988)........................................................................................8

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
140 S. Ct. 2049 (2020) ..............................................................................2, 3, 4

*Presler v. Domestic & Foreign Missionary Soc'y*,
113 A.D.3d 409 (2014)......................................................................................8

*Rodman v. Stryker Sales Corp.*,
No. 14 Civ. 1102 (JMF), 2014 WL 5002095 (S.D.N.Y. Oct. 7, 2014) (Furman,
J.), *aff'd*, 604 F. App'x 81 (2d Cir. 2015)..........................................................5

*Sieger v. Union of Orthodox Rabbis of U.S. & Canada, Inc.*,
1 A.D.3d 180 (2003)..........................................................................................8

*Skrzypczak v. Roman Catholic Diocese of Tulsa*,
611 F.3d 1238 (10th Cir. 2010)........................................................................3

*Stukuls v. State*,
42 N.Y.2d 272 (1977)........................................................................................9

*Toker v. Pollak*,
44 N.Y.2d 211 (1978)........................................................................................7

*Tulino v. City of New York*,
No. 15 Civ. 7106 (JMF), 2016 WL 2967847 (S.D.N.Y. May 19, 2016)
(Furman, J.)........................................................................................................4

*Udechukwu v. City of New York*,
333 F. Supp. 3d 161 (E.D.N.Y. 2018)...............................................................7

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) ..........................................................................................6

iii

*Weldy v. Piedmont Airlines, Inc.*,
   985 F.2d 57 (2d Cir. 1993) ................................................................................................7

**Statutes**

NYLL § 651.......................................................................................................................6

65858240v.1

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion misses the mark in a profound way. In circumscribing the broad scope of the ministerial exception by arguing it does not bar their employment claims for gender discrimination, constructive discharge, and retaliation, Plaintiffs ignore the landscape of U.S. Supreme Court decisional law that forbids this Court from entertaining, much less sustaining, those claims. Plaintiffs also fail to properly dispute that their sexual harassment claims are time-barred, or that this Court lacks jurisdiction as to the NYCHRL claim, and abandon their public accommodations claim altogether. Plaintiffs also ignore the plain text definition of an "employee" under the NYLL. Finally, by only focusing on the alleged "falsity" of a defamatory *per se* statement, Plaintiffs cannot establish "malice" to undercut the application of the common interest privileges. These failures demonstrate there is no "good cause" to allow further amendments, and the Amended Complaint must be dismissed with prejudice.

## ARGUMENT

### I.    THE MINISTERIAL EXCEPTION APPLIES TO THE EMPLOYMENT CLAIMS

Controlling authority dictates that permitting Plaintiffs' gender discrimination, constructive discharge, and retaliation claims to proceed would be in violation of the GOA's right to internal self-governance. Despite Plaintiffs attempt to redraw the parameters of their claims as simply "asking the Court to evaluate whether the discriminatory and harassing treatment by their supervisors" was discriminatory, (Opp., 8), Plaintiffs' pleading prays otherwise, alleging that they "deserved to retain their employment" and "did not do anything to merit discharge or discipline." (¶¶ 77, 85. 97). Regardless, in restricting the exception to only include cases challenging tangible employment actions, Plaintiffs take too narrow of a view of the unanimous decision in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, which explained such a limitation "misses the point of the ministerial exception." 565 U.S. 171, 194 (2012). The exception, which bars

"employment discrimination claims against religious groups that employ or formerly employed" a plaintiff, is not limited to protecting hiring and termination decisions, but more broadly prohibits any entanglement in internal Church governance including the "authority to select *and control who will minister to the faithful*—a matter "strictly ecclesiastical," . . . — [which] is the church's alone," free from government interference. *Id.* at 194-95 (emphasis added). The Supreme Court in *Our Lady of Guadalupe Sch. v. Morrissey-Berru* also found a cause of action's nomenclature irrelevant in dismissing age and gender discrimination claims under the exception. 140 S. Ct. 2049 (2020).[1]

Plaintiffs' overemphasis on *Demkovich v. St. Andrew the Apostle Par.*, No. 19-2142, 2020 WL 5105147 (7th Cir. Aug. 31, 2020) — a non-binding, out-of-circuit authority with critical factual differences — is unpersuasive. First, Plaintiffs' sexual harassment claims are otherwise time-barred. (*See* Motion, Section II). Further, as the Seventh Circuit contemplated, when, as here, cases present "factual questions that would entangle courts excessively in substantive religious decision-making," then "district judges can narrow or dismiss" them. *Id.* at *15. To engage in an analysis of Plaintiffs' claims, the Court would be called to determine whether Plaintiffs' religious work environment was appropriate. Unlike the situation of the lay teacher analyzed by the *Demkovich* Court, an inquiry involving "sanctified nuns" would necessarily delve into matters of the GOA's governance, administration of its ecclesiastical duties, and its control over workplace conditions between "Spiritual Fathers" and "sanctified nuns." Indeed, virtually *every step* the GOA took to respond and react to Plaintiffs' service as nuns would be dissected by a secular court.

Such governmental intrusion into the separation of church and state and excessive entanglement with the GOA's core functions and autonomy is explicitly forbidden by the

---

[1] Plaintiffs' backdoor attempt to impose judicial oversight over these claims fails analytical scrutiny. Their position encourages gamesmanship by illogically allowing a ministerial plaintiff to circumvent pleading otherwise-barred and non-actionable claims by merely presenting them in causes of action that are unrelated to tangible actions.

Constitution. Although Plaintiffs note the "tension," (Opp., 11), they fail to cite the *binding* Second Circuit authority that as to any "tension" between an employer's right to freedom of religion and employment rights, the ministerial exception "resolves that tension" against a plaintiff and in favor of the Church. *Fratello v. Archdiocese of New York*, 863 F.3d 190, 210 (2d Cir. 2017) (affirming summary judgment dismissal of lay principal's gender discrimination and retaliation claims); *see also Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1245 (10th Cir. 2010) (affirming dismissal of ministerial employee's sex discrimination claims for tangible employment actions and hostile environment, reasoning it would pose too great a threat of entanglement).

Plaintiffs acknowledge the insecurity in their position by arguing that the ministerial exception *does not bar their claims*, but simultaneously asking for discovery to determine whether their roles *fall within the exception*. Contradiction aside, discovery is unnecessary as the relevant facts are plead and within Plaintiffs' control. Justice Sotomayor's dissent in *Guadalupe*, joined by the late Justice Ginsburg, provides an illustrative roadmap for this Court's analysis. 140 S. Ct. at 2079 (Sotomayor, J., dissenting). The dissent found distinguishable that neither teacher was a "Catholic spiritual leader or 'minister,'" and it undermined the school's claims that neither had a "significant degree of religious training," or underwent a "formal process of commissioning." *Id.* This analysis highlights by comparison why the ministerial exception applies to Plaintiffs, both of whom attended religious schooling, were "sanctified," and ran mass services. (*See* Motion at 8). Redundant discovery would only reinforce these admissions that they served "ministerial" roles.

Lastly, Plaintiffs incorrectly argue that their revision to qualify themselves as "lay people" is dispositive.[2] The *Guadalupe* decision explicitly rejected rigid allegiance to titles alone, stating:

---

[2] Far from "ignoring" Plaintiffs' "lay nuns" characterization (Opp., 15), Defendants have argued title alone is far from dispositive since courts apply the ministerial exception to music teachers and press secretaries. (*See* Motion at 8-9). Despite Plaintiffs' reliance on *Stabler*, (a case involving a secular librarian and distinguished in Defendants' Motion), the ministerial exception applies to "sanctified nuns" as it applied to "lay teachers" in *Hosanna-Tabor* and *Fratello*.

"we never said that [] title . . . was necessary to trigger the *Hosanna-Tabor* exception," 140 S. Ct. at 267, rather, "[w]hat matters, at bottom, is what an employee does." *Id.* at 2064. ("[I]f titles were all-important, courts would have to decide which titles count and which do not, and it is hard to see how that could be done without looking behind the titles to what the positions actually entail."); *Fratello*, 863 F.3d at 210 (rejecting plaintiff's argument that formal use of term "lay" eclipses any religious functions, and holding title alone is not dispositive). Counts I, III, V and VI present a textbook definition of claims barred by the ministerial exception. Permitting this inquiry to proceed further wastes judicial resources and invites the very violation of Defendants' First Amendment rights that the ministerial exception intended to prevent by its formal adoption.

## II.    PLAINTIFFS' SEXUAL HARASSMENT CLAIMS ARE TIME-BARRED

Plaintiffs concede, as they must, that they do not seek redress for alleged harassment occurring prior to March 18, 2017. (Opp., 15). Yet there is nothing subtle about their admission that they plead facts relating to events they *knew* were time-barred, and did so to "gin up" their timely events which on their own do not reveal actionable conduct.[3] This amounts to a wholesale pleading failure. Plaintiffs' only other argument contends Defendants prematurely argue that "petty slights and trivial inconveniences" are insufficient to state a NYCHRL claim. *This* Court has applied the *same* standard at the pleadings stage. *See Tulino v. City of New York*, No. 15 Civ. 7106 (JMF), 2016 WL 2967847, at *4 (S.D.N.Y. May 19, 2016) (noting "[n]evertheless, even under the NYCHRL, "petty, slight, or trivial inconvenience[s] are not actionable.") (Furman, J.).[4]

## III.    THERE IS NO DISCRIMINATORY IMPACT IN NEW YORK CITY

While the Amended Complaint is long on ideals, it is short on facts supporting a NYCHRL claim. First, Plaintiffs concede the NYCHRL "statute does not expressly cover the issues raised

---

[3] A continuing violation theory is belied by Plaintiffs' concession they "accepted" the conduct for years. (Opp., 1).
[4] Though the Court ultimately denied the motion to dismiss, the case bears no resemblance to this religious dispute.

4

by Plaintiffs' case." (Opp., 4 ). Following an unnecessarily lengthy recitation of the NYCHRL's amendments, Plaintiffs bury the statement: "Defendants' conduct clearly had an impact that was felt in New York City and discovery will provide further proof of the impact." (Opp., 5). Although Plaintiffs plead no such facts to oppose dismissal on the pleadings, they insert into the Opposition the number of their alleged visits to New York City. "Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *Rodman v. Stryker Sales Corp.*, No. 14 Civ. 1102 (JMF), 2014 WL 5002095, at *2 (S.D.N.Y. Oct. 7, 2014) (Furman, J.), *aff'd*, 604 F. App'x 81 (2d Cir. 2015) (citing *K.D. ex rel. Duncan v. White Plains Sch. Dist.,* 921 F.Supp.2d 197, 209 n. 8 (S.D.N.Y. 2013)). Plaintiffs also recycle the same flawed reliance on the locus of "decisions whether or not to investigate Plaintiffs' claims" that the Court of Appeals referred to a decade ago as "impractical" and a position that would improperly "expand[] the NYCHRL protections to non-residents who have, at most, "tangential contacts with the city." *Hoffman v. Parade Publications* 15 N.Y.3d 285, 290-91 (2010) ("success and failure of an NYCHRL does not reply on something as arbitrary as where a termination decision was made"). Plaintiffs cannot establish the alleged discriminatory conduct had an *impact* in New York City and the Court should reject such an application of the NYCHRL.

## IV.    THE GENDER DISCRIMINATION CLAIM IS MERITLESS

Plaintiffs' arguments aim to disrupt the bedrock of the GOA's First Amendment rights. This case involves women who voluntarily sought the blessing of the church to become nuns, in a faith they plead has differently-defined roles for "male clergy" and females in a monastery. Plaintiffs' disparate pay complaints cannot possibly be disentangled in a constitutionally sanctioned manner where the First Amendment *ensures* separation of church and state. For example, in arguing *Hosanna-Tabor*, Plaintiff and the EEOC conceded both that it *would* violate the First Amendment for courts to apply laws to compel the ordination of women by the Catholic

Church, and that religious organizations could successfully defend against employment discrimination claims in those circumstances by invoking the constitutional right to freedom of association — a right "implicit" in the First Amendment. 565 U.S. at 189. There is no difference between this hypothetical and Plaintiffs' gender discrimination claim — both seek unconstitutional review of church governance which poses a risk to Free Association and Free Exercise of religion.

## V.   PLAINTIFFS ARE NOT EMPLOYEES UNDER THE NYLL

While Plaintiffs argue an amalgam of a gender discrimination claim re-packaged as a wage claim, their arguments, which lack any legal authority, fail to support the wage claim.[5] As a fatal omission, Plaintiffs do not challenge Defendants' argument that the very crux of a wage recovery action requires allegations of what wages are actually owed and the basis for computing them. The Court must deem those arguments as conceded, and Plaintiffs' defenses abandoned. *Dineen v. Stramka,* 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002) (finding failure to address claims in opposition "enabl[es] the Court to conclude that [plaintiff] has abandoned them"). Plaintiffs seemingly fault Defendants for not belaboring with case law their argument that sanctified nuns do not qualify as employees under the plain language of the NYLL. Such an inquiry is resolved by the statutory text itself, which specifically excludes members of religious orders. NYLL § 651. Most significantly, Plaintiffs plead they understood they would not earn wages, (Am. Compl. ¶ 20), and nevertheless sought a "blessing" to become nuns. (*Id.* ¶ 37). While Plaintiffs argue this does not make them "complicit," nearly seventy-five years of established U.S. Supreme Court precedent holds the term "employee" *does not* cover persons "who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *Fratello*, 863 F.3d at 198 (noting that a religious group's

---

[5] Plaintiffs incorrectly assert Defendants "concede" they were "ministerial *employees*." (Opp., 9). To the contrary, Defendants argued that Plaintiffs could not establish that "as nuns, they were *employees* of the GOA." (Motion at 2).

"autonomy over internal affairs is premised on 'voluntary' decisions of individuals to engage in 'religious activity'"). Plaintiffs establish no special circumstances to divert from *even more* Supreme Court precedent, and their claims for unpaid wages must be dismissed.

## VI.   PLAINTIFFS DO NOT ESTABLISH DEFAMATION PER SE WITH MALICE

### A.   The Statements Are Privileged

Plaintiffs' argument that Mother Eisodia's alleged defamatory *per se* statements reporting a suspect felony are not privileged conflicts with nearly 200 years of precedent supporting Defendants' position. "[A] communication made by a person with an interest or duty to make the communication and sent to a person with a corresponding interest or duty is protected by a qualified privilege, even though without the privilege the communication would be "slanderous and actionable." *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 62 (2d Cir. 1993). Assuming Plaintiffs sufficiently plead a defamation claim, the statements are protected by two privileges.

Public interest is served by shielding certain possibly defamatory communications from litigation, rather than risk stifling them altogether. *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992). This includes a "qualified privilege for statements made to police officers about suspected crimes." *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 172 (E.D.N.Y. 2018). The privilege "foster[s] the public purpose of encouraging citizens to come forth with information concerning criminal activity." *Toker v. Pollak*, 44 N.Y.2d 211, 221 (1978). "If the information is given in good faith by an individual who believes the information to be true, he is protected against the imposition of liability in a defamation action . . ." *Id.*

New York courts also recognize a "common interest" qualified privilege which extends to cases with "communication made by one person to another upon a subject in which both have an interest." *Brockman v. Frank*, 149 Misc. 2d 399, 401 (Sup. Ct. N.Y. Cty. 1991). The privilege is applied in a wide variety of situations, "to ensure that the flow of information between persons

sharing a common interest [] not be impeded." *Liberman*, 80 N.Y.2d at 437. Without denying that a church shares a common interest with its parishioners, Plaintiffs attempt to gerrymander the contours of the  privilege so that it could *only* apply to discussions between a church and its employees, rather than parishioners or prospective parishioners." There is no such limitation endorsed by the Court of Appeals. Plaintiffs misread a limitation into *Presler v. Domestic & Foreign Missionary Soc'y*, where it does not exist, as there, the Court merely answered whether the speaker was acting in the scope of her employment. 113 A.D.3d 409, 410 (2014).

When the common-interest privilege is properly considered, courts dismiss defamation cases involving statements between church members who would have an interest in such matters. *See e.g.*, *Glazier v. Harris*, 159 A.D.3d 581 (2018) (finding church employee's allegedly defamatory statements to church council members privileged when made to further the well-being of the church and not said with malice); *Sieger v. Union of Orthodox Rabbis of U.S. & Canada, Inc.*, 1 A.D.3d 180, 182 (2003) (finding rabbi's defamatory statements were privileged since made in furtherance of a common interest of a religious organization); *Mihlovan v. Grozavu*, 72 N.Y.2d 506, 509 (1988) (finding defamatory statements made during church meetings privileged as "fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs," but reversing due to malice); *Kantor v. Pavelchak*, 134 A.D.2d 352, 352 (1987) (affirming dismissal of defamation where plaintiff conceded statements made by members of the church to each other and council about rumors of plaintiff's impropriety were privileged, and plaintiff could not defeat privilege by proving falsity or malice). Plaintiffs' narrow and unyielding definition of the privilege is undermined by these cases finding that a comment can be privileged if uttered in the context of church association. Plaintiffs failed to plead that the statements were not privileged when uttered to those with a common interest in the Monastery's leadership. *See*

*Fleming v. Laakso*, No. 18-cv-1527, 2019 WL 959521, at *10 (S.D.N.Y. Feb. 5, 2019) (dismissing defamation claim where plaintiff had not alleged that statements were unprivileged, as "the absence of an applicable privilege is an element of the cause of action in New York").

### B.   No Facts Support Actionable "Malice"

The Amended Complaint does not establish that the statements were said with knowledge they were false or with a reckless disregard as to their truth, sufficient to overcome the application of either privilege. *Stukuls v. State*, 42 N.Y.2d 272, 279 (1977). Plaintiffs misunderstand the term "malice," as "falsity is not sufficient for an inference of malice." *Id*. at 279.[6] "[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action." *Liberman*, 80 N.Y.2d at 438. To be defamation *per se* with malice, a statement could be "consistent *only* with a desire to injure the plaintiff to justify [sending] the question of malice to the jury." *Stukuls*, 42 N.Y.2d at 279 (citing *Fowles v. Bowen*, 30 N.Y. 20, 26 (1864) (emphasis added). "By actual malice is meant "personal spite or ill will, or culpable recklessness or negligence." *Id.* While the burden is plaintiffs', the authority to determine whether a statement is reasonably susceptible to a defamatory meaning rests with the courts. *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997). Plaintiffs pleading does not meet the *Stukuls* standard that the statement was made with "personal spite or ill will." Plaintiffs plead that Mother Eisodia had newly joined the Monastery as of November 2, 2018, predating their departure by only sixteen days. Plaintiffs plead no facts to indicate Mother Eisodia knew about their issues with Father Makris or the GOA, undercutting a claim of personal spite or ill will, or recklessness to find "malice."

---

[6] Even if "falsity" is *equivalent* to malice, enough to overcome a privilege, Plaintiffs do not sufficiently allege Mother Eisodia's allegation was false, given they do not allege sanctified nuns could own personal property. *Fowles*, 30 N.Y. at 26 (noting plaintiff must show a charge was false, before he can ask jury to find slander was malicious)

While Plaintiffs argue "the Amended Complaint clearly states that Defendant Eisodia was informed that her statements were false and knew them to be untrue," (Opp., 13), the pleading undermines this version of the facts. Mother Eisodia learned that the car allegedly belonged to Plaintiffs *after* she properly reported it to the police, (Am. Compl. ¶ 65), proving her original report was *not* made with malice. Although Plaintiffs claim Defendants ignore that Eisodia "continued" to make defamatory statements about Plaintiffs even after being allegedly informed they were false, Defendants argued Plaintiffs plead *no facts* to support the claim that Eisodia continued making such statements, when, where, what, and to whom they were made. (*See* Motion, p. 24, n. 20; *Berger v. Temple Beth-El of Great Neck*, 41 A.D.3d 626, 627 (2007) ("The plaintiff's conclusory allegations of malice are insufficient to defeat the claim of qualified privilege.")).

## VII.   THE COURT SHOULD NOT GRANT LEAVE TO AMEND AGAIN

The Court warned Plaintiffs would not be "given any further opportunity to amend the complaint" in response to motions. (ECF 16, July 14, 2020 Order). Ignoring the Order, Plaintiffs seek to amend again, but it was incumbent upon them to make an application to first modify that Order, and then seek leave to craft a suitable pleading. Independent of that, Plaintiffs disregard that where an order established a deadline for amendments, a Rule 15(a) amendment is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order, *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 244 (2d Cir. 2007), which shall not be modified except upon a showing of "good cause," depending on the diligence of the moving party. *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). "[T]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *iMedicor, Inc v. Access Pharm., Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. 2013). Plaintiffs proffer no justification for allowing further amendments to their deficient pleading, and the Order must stand for what it says: "no further opportunity to amend."

## CONCLUSION

For the foregoing reasons, along with the reasons set forth in Defendants' moving brief, the Amended Complaint should be dismissed with prejudice, with no further opportunity to amend granted,[7] and the Court should grant Defendants such other and further relief as this Court deems just and proper.

Dated: New York, New York
      September 29, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Gerald L. Maatman, Jr.*
    Gerald L. Maatman, Jr.
    gmaatman@seyfarth.com
    Karen Bitar
    kbitar@seyfarth.com
    Lisa Savadjian
    lsavadjian@seyfarth.com
    620 Eighth Avenue
    New York, NY 10018
    Telephone: (212) 218-5500
    Facsimile: (212) 218-5526

Attorneys for Defendants
GREEK ORTHODOX ARCHDIOCESE OF
NORTH AMERICA, GERASIMOS MAKRIS
a/k/a FATHER GERASIMOS MAKRIS,
DEMETRIOS TRAKATELLIS a/k/a
ARCHBISHOP DEMETRIOS, ALLEN
PAROPOULOS a/k/a BISHOP ANDONIOS,
AND CHARLENE ASQUITH a/k/a
MOTHER EISODIA

---

[7] Plaintiffs did not supplement their Opposition with a proposed Second Amended Complaint, which hinders the Court's review as to whether further hypothetical amendments have merit. *See Capak v. Epps*, No. 18CV4325, 2020 WL 2543092, at *4 (S.D.N.Y. Apr. 7, 2020).

11