UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

ELIZABETH BRANDENBURG a/k/a
MOTHER FOTEINI, MARIA KALLIS a/k/a
SISTER THEONYMPHI,

             Plaintiffs,

      -against-

GREEK ORTHODOX ARCHDIOCESE OF
NORTH AMERICA, GERASIMOS
MAKRIS a/k/a FATHER GERASIMOS
MAKRIS, DEMETRIOS TRAKATELLIS
a/k/a ARCHBISHOP DEMETRIOS, ALLEN
PAROPOULOS a/k/a BISHOP ANDONIOS,
AND CHARLENE ASQUITH a/k/a
MOTHER EISODIA,

             Defendants.

-------------------------------------------------- X

Civil Action No.: 1:20 Civ. 03809-JMF

The Hon. Jesse M. Furman

**DEFENDANTS' ANSWER TO
PLAINTIFFS' SECOND AMENDED
COMPLAINT, AFFIRMATIVE AND
OTHER DEFENSES, AND
COUNTERCLAIMS**

Defendants Greek Orthodox Archdiocese of North America, (the "GOA"), Gerasimos

Makris a/k/a Father Gerasimos Makris, Demetrios Trakatellis a/k/a Archbishop Demetrios, Allen

Paropoulos a/k/a Bishop Andonios, and Charlene Asquith a/k/a Mother Eisodia (all four

individuals collectively referred to as the "Individual Defendants") by and through their attorneys

Seyfarth Shaw LLP, hereby submit their Answer to Plaintiffs' Second Amended Complaint, as

follows:

<u>**PLAINTIFFS' CLAIMS NOT BARRED BY THE MINISTERIAL EXCEPTION**</u>

<u>**COMPLAINT ¶1:**</u>

It is well settled that a church may hire, fire, promote, refuse to promote, and prescribe
duties of its minsters [sic] free from scrutiny of the courts and without justification for such
actions. However, hostile work environment claims based on sex, as well as retaliation for
engaging in protected activity as a result of those claims, by a clergy member against another
clergy member is not barred by the First Amendment or the "ministerial exemption."

**ANSWER:**

Paragraph 1 purports to restate the state of the law regarding the Ministerial Exception within the First Amendment to the United States Constitution, and thus, does not contain any factual allegations requiring a response. To the extent a response is required, Defendants deny the allegations in Paragraph 1 of the Second Amended Complaint.

Defendants further state that Plaintiffs' claims were dismissed to the extent they were premised on any tangible employment action as barred by the "ministerial exception" in the Court's Opinion and Order dated June 1 2021. (ECF No. 28).

## THE PARTIES

**COMPLAINT ¶2:**

Plaintiff ELIZABETH BRANDENBURG a/k/a MOTHER FOTEINI is an individual residing in Missouri [hereinafter "Plaintiff Brandenburg"]. At the relevant times, she was employed by the GREEK ORTHODOX ARCHDIOCESE OF NORTH AMERICA and resided at the All Saints Monastery in Calverton, New York.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff Brandenburg resides in Missouri. Defendants admit that, at certain times, Plaintiff Brandenburg resided at the All Saints Monastery in Calverton, New York and deny the remaining allegations in the second sentence of Paragraph 2 of the Complaint.

**COMPLAINT ¶3:**

Plaintiff MARIA KALLIS a/k/a SISTER THEONYMPHI [hereinafter "Plaintiff Kallis"] is an individual residing in Missouri. At the relevant times, she was employed by the GREEK ORTHODOX ARCHDIOCESE OF NORTH AMERICA and resided at the All Saints Monastery in Calverton, New York.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff Kallis resides in Missouri. Defendants admit that, at certain times, Plaintiff

Kallis resided at the All Saints Monastery in Calverton, New York and deny the remaining

allegations in the second sentence of Paragraph 3 of the Complaint.

## COMPLAINT ¶4:

Upon information and belief, Defendant GREEK ORTHODOX ARCHDIOCESE OF NORTH AMERICA is a religious institution located in Manhattan, NY [hereinafter "Archdiocese" or "Defendant Archdiocese"].

## ANSWER:

GOA avers that it is a religious corporation with its principal place of business in

Manhattan, New York.

Individual Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations in Paragraph 4 of the Second Amended Complaint.

## COMPLAINT ¶5:

Upon information and belief, Defendant GERASIMOS MAKRIS a/k/a FATHER GERASIMOS MAKRIS [hereinafter "Defendant Makris"] is an individual whose place of residence is unknown, however, during the time in question he was a resident of New York. He was employed by the Archdiocese and was also a member and Presiding Priest of the Holy Cross Church in Brooklyn Parish during the relevant time period.

## ANSWER:

Father Makris admits that he was a resident of New York at times relevant to the Second

Amended Complaint, and admits that he was a Presiding Priest of the Holy Cross Church in

Brooklyn, NY, lacks knowledge or information sufficient to form a belief as to the meaning of the

"time in question," and denies the remaining allegations in Paragraph 5 of the Second Amended

Complaint.

## COMPLAINT ¶6:

Upon information and belief, Defendant DEMETRIOS TRAKATELLIS a/k/a ARCHBISHOP DEMETRIOS [hereinafter "Defendant Demetrios"] is an individual whose place of residence is unknown, however, during the time in question he was a resident of New York. He was employed by the Archdiocese as the Archbishop during the relevant time period until 2019.

**ANSWER:**

Defendant Archbishop Demetrios admits that he was a resident of New York, and avers that until 2019, he was the Archbishop of the GOA, lacks knowledge or information sufficient to form a belief as to the meaning of the "time in question," and denies the remaining allegations in Paragraph 6 of the Second Amended Complaint.

**COMPLAINT ¶7:**

Upon information and belief, Defendant ALLEN PAROPOULOS a/k/a BISHOP ANDONIOS [hereinafter "Defendant Andonios"] is an individual whose place of residence is unknown, however, during the time in question he was a resident of New York. He was employed by the Archdiocese as a Chancellor and Bishop during the relevant time period.

**ANSWER:**

Defendant Bishop Andonios admits that he was a resident of New York, and avers that he is a Bishop of the GOA and until 2019 he was the Chancellor of the GOA, lacks knowledge or information sufficient to form a belief as to the meaning of the "time in question," and denies the remaining allegations in Paragraph 7 of the Second Amended Complaint.

**COMPLAINT ¶8:**

Upon information and belief, Defendant CHARLENE ASQUITH a/k/a MOTHER EISODIA [hereinafter "Defendant Eisodia"] is an individual whose place of residence is in New York. She is employed by the Archdiocese and is also a member of the All Saints Monastery in Calverton, New York.

**ANSWER:**

Defendant Mother Eisodia admits that she is a resident of New York, and avers that she is the Abbess of the All Saints Monastery in Calverton, New York, and denies the remaining allegations in Paragraph 8 of the Second Amended Complaint.

## JURISDICTION AND VENUE

**COMPLAINT ¶9:**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the lawsuit is between "citizens of different States" and the amount in controversy exceeds "$75,000, exclusive of interests and costs."

**ANSWER:**

Paragraph 9 of the Second Amended Complaint purports to state a legal conclusion to

which no response is required.

**COMPLAINT ¶10:**

Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and the acts and omissions giving rise to this Complaint occurred in this District.

**ANSWER:**

Paragraph 10 of the Second Amended Complaint purports to state a legal conclusion to

which no response is required.

## JURY DEMAND

**COMPLAINT ¶11:**

Plaintiffs demand a trial by jury in this action.

**ANSWER:**

Defendants object to a trial by jury on any equitable claims, and all other issue as to

which a jury is not permitted as of right as a matter of law.

## FACTS

### General Background

**COMPLAINT ¶12:**

Plaintiff Brandenburg is a woman employed by the Defendant Archdiocese of New York since April 2010.

**ANSWER:**

Defendants deny the allegations in Paragraph 12 of the Second Amended Complaint, and

aver that Plaintiff Brandenburg's involvement with the All Saints Monastery ceased, as pled

herein, in November 2018.

**COMPLAINT ¶13:**

Plaintiff Kallis is a woman employed by the Defendant Archdiocese of New York since
April 2010.

**ANSWER:**

Defendants deny the allegations in Paragraph 13 of the Second Amended Complaint, and

aver that Plaintiff Kallis's involvement with the All Saints Monastery ceased, as pled herein, in

November 2018.

**COMPLAINT ¶14:**

At all times relevant herein, Plaintiffs Brandenburg and Kallis were subjected to sexual
harassment, gender discrimination, and retaliation by Defendant Makris, Defendant Archdiocese,
Defendant Andonios, and Defendant Demetrios, that took place within the five boroughs of New
York City.

**ANSWER:**

Defendants deny the allegations in Paragraph 14 of the Second Amended Complaint.

**COMPLAINT ¶15:**

At all relevant times herein, the Archdiocese, the Holy Cross Parish, and the All Saints
Monastery were places that were open to the public and were places of public accommodation
when the conduct and omissions complained of herein took place.

**ANSWER:**

Defendants deny the allegations in Paragraph 15 of the Second Amended Complaint.

Defendants further aver that Plaintiffs' discrimination in places of public accommodation claim

was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and

therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶16:**

Since April 2010, Plaintiffs Brandenburg and Kallis have been working for Defendant Archdiocese while located at the All Saints Monastery in Calverton, New York, and traveling into New York City for various work related duties and obligations.

**ANSWER:**

Defendants deny the allegations in Paragraph 16 of the Complaint except admit that

Plaintiffs Brandenburg and Kallis were once located at the All Saints Monastery in Calverton, New

York.

**COMPLAINT ¶17:**

On or about November 1, 2018, both Plaintiffs were forced to leave due to a pattern of sexual harassment and gender discrimination perpetrated by Defendant Makris and condoned by Defendants Demetrios, Andonios, and Archdiocese.

**ANSWER:**

Defendants admit that Plaintiffs left the All Saints Monastery on or about November 18,

2018, and deny the remaining allegations of Paragraph 17 of the Second Amended Complaint.

**COMPLAINT ¶18:**

Upon information and belief, Defendant Archdiocese pays its male clergy a salary in connection with services in furtherance of their job tasks and duties.

**ANSWER:**

Plaintiffs' Fifth and Seventh Causes of Action for gender discrimination and violations of

the New York Labor Law were dismissed by the Honorable Judge Furman in the Opinion and

Order dated June 1, 2021, (ECF No. 28), and therefore, no answer is required, but to the extent a

response is required, it is denied.

**COMPLAINT ¶19:**

Upon information and belief, Defendant Archdiocese avoids paying women by referring to and considering them as "laypeople" rather than clergy.

72228318v.7

**ANSWER:**

Defendants deny the allegations in Paragraph 19 of the Second Amended Complaint.

Defendants further aver that Plaintiffs' Fifth and Seventh Causes of Action for gender discrimination and violations of the New York Labor Law were dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required to these dismissed claims. (ECF No. 28).

**COMPLAINT ¶20:**

At all times relevant herein, although Plaintiffs Brandenburg and Kallis had the title of "nun" while working for Defendant Archdiocese they were referred to and considered as "laypeople" by the Archdiocese Defendants such that they would not be paid for carrying out services in furtherance of their job tasks and duties. Examples of tasks and duties performed by Plaintiffs include, but are not limited to, the following:

a.   Traveling to the Holy Cross Parish located in Brooklyn, New York, between approximately 5 – 10 times per year in order to sing in the Mass or speak to students at the parochial school;

b.   Traveling to Defendant Archdiocese located in Manhattan, New York, approximately 6 times per year in order to meet with Defendant Archdiocese and Bishops in order to provide them with updates regarding the All Saints Monastery and to receive permission to carry out functions at the All Saints Monastery, such as renovations and other administrative functions;

c.   Traveling to Queens, New York, every week to take lessons on liturgical music;

d.   Accompanying Defendant Demetrios to services at Parishes located throughout all five boroughs of New York City in order to support Defendant Archdiocese;

e.   Traveling to Defendant Archdiocese located in Manhattan, New York, at least once per month in order to perform tasks related to organizing a national choir, including working with a committee and planning concerts;

f.   Listening to Archbishop Demetrios each year at the St. Nicholas ground zero project in Manhattan, New York;

g.   Attending multiple lectures per year throughout the five boroughs of Manhattan, including an annual lecture at Fordham University as well as visiting scholar lectures at Defendant Archdiocese in New York City;

**ANSWER:**

Defendants GOA, Archbishop Demetrios, Bishop Andonios and Father Makris deny the allegations in Paragraphs 20 (a) through 20 (g) of the Second Amended Complaint.

Mother Eisodia lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraphs 20 (a) through 20 (g) of the Second Amended Complaint.

**COMPLAINT ¶21:**

Plaintiffs Brandenburg and Kallis were both expected and required to regularly travel to New York City throughout the course of their employment with Defendant Archdiocese.

**ANSWER:**

GOA, Archbishop Demetrios, Bishop Andonios and Father Makris deny the allegations in Paragraph 21 of the Second Amended Complaint.

Mother Eisodia lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21 of the Second Amended Complaint.

**COMPLAINT ¶22:**

Plaintiffs Brandenburg and Kallis spent an estimated 130 – 135 days per year, approximately one-third of the year, in New York City in connection with their employment.

**ANSWER:**

GOA, Archbishop Demetrios, Bishop Andonios and Father Makris deny the allegations in Paragraph 22 of the Second Amended Complaint.

Mother Eisodia lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the Second Amended Complaint.

**COMPLAINT ¶23:**

Given the substantial time that Plaintiffs Brandenburg and Kallis spent in New York City, and given the pervasiveness and frequency of the wrongful conduct by Defendants, the Defendants' discriminatory, harassing, and retaliatory acts had an impact in New York City.

**ANSWER:**

GOA, Archbishop Demetrios, Bishop Andonios and Father Makris deny the allegations in Paragraph 23 of the Second Amended Complaint.

Mother Eisodia lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the Second Amended Complaint.

### Background: 2003 - 2009

**COMPLAINT ¶24:**

Upon information and belief, Defendant Makris was the Chaplain and Dean of Students in Hellenic College-Holy Cross in Massachusetts from approximately 2000 through 2007.

**ANSWER:**

GOA, Archbishop Demetrios, Bishop Andonios and Father Makris admit only that for a period of time Father Makris was Chaplain and Dean of Students at Hellenic College - Holy Cross in Massachusetts and deny the remaining allegations in Paragraph 24 of the Second Amended Complaint.

Mother Eisodia lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Second Amended Complaint.

**COMPLAINT ¶25:**

In or around Fall 2003, Plaintiff Kallis began her undergraduate studies at Hellenic College-Holy Cross in Massachusetts and met Defendant Makris, who became her Spiritual Father.

**ANSWER:**

Father Makris admits the allegations in Paragraph 25 of the Second Amended Complaint and avers that Plaintiff Kallis requested that Father Makris become her Spiritual Father.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 of the Second Amended Complaint.

**COMPLAINT ¶26:**

In or around Spring 2004, Plaintiff Brandenburg began her graduate studies at Hellenic College-Holy Cross in Massachusetts and met Defendant Makris, who appointed himself her Spiritual Father.

**ANSWER:**

Defendants deny the allegations that Father Makris appointed himself Plaintiff Brandenburg's Spiritual Father. Father Makris admits the remaining allegations in Paragraph 26 of the Second Amended Complaint.

Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 26 of the Second Amended Complaint.

**COMPLAINT ¶27:**

Upon information and belief, a "Spiritual Father" in the Greek Orthodox branch of Catholicism is someone who guides his "Spiritual Children" in their faith and teaches them how to be close to God. In the Greek Orthodox faith, a person's relationship with their "Spiritual Father" is considered to be one of the most important relationships one can have. A "Spiritual Father" is one who can take confession and may not divulge what was shared in confession.

**ANSWER:**

Defendants admit that the relationship with a "Spiritual Father" is considered to be one of the most important relationships one can have in the Greek Orthodox faith, deny the remaining allegations in Paragraph 27 of the Second Amended Complaint, and aver that the branch is Greek Orthodox faith is branch of Christianity, not Catholicism.

**COMPLAINT ¶28:**

In or around March 2004, a male student sexually assaulted Plaintiff Brandenburg and confessed to Defendant Makris within a few days.

**ANSWER:**

To the extent the allegations in Paragraph 28 of the Second Amended Complaint are directed to a non-party, Defendants lack knowledge sufficient to form a belief about the truth of

those allegations. Father Makris lacks knowledge or information sufficient to form a belief as to the truth of remaining allegations of Paragraph 28 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 28 of the Second Amended Complaint.

**COMPLAINT ¶29:**

Upon information and belief, both Defendant Makris and the Hellenic College- Holy Cross were aware that the male student previously sexually assaulted a different female enrolled at Hellenic College-Holy Cross student prior to attacking Plaintiff Brandenburg.

**ANSWER:**

To the extent the allegations in Paragraph 29 of the Second Amended Complaint are directed to non-party Hellenic College-Holy Cross, Defendants lack knowledge sufficient to form a belief about the truth of those allegations.

Father Makris denies the allegations in Paragraph 29 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29 of the Second Amended Complaint.

**COMPLAINT ¶30:**

Upon information and belief, Defendant Makris did not report the crime to local police, nor did he or the school launch an investigation.

**ANSWER:**

Father Makris admits the allegations in Paragraph 30 of the Second Amended Complaint but denies knowledge of the crime that should have been reported or investigated.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 of the Second Amended Complaint.

**COMPLAINT ¶31:**

In or around July 2004, Defendant Makris made Plaintiff Brandenburg marry her attacker in order to cure the sexual assault.

**ANSWER:**

Father Makris denies the allegations in Paragraph 31 of the Second Amended Complaint, denies that he has the power to make anyone marry, and further avers that Plaintiff Brandenburg requested that Father Makris perform her ecclesiastical wedding at her home Greek Orthodox Parish in Missouri.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 of the Second Amended Complaint. Defendants further aver that Orthodox Priests do not have the power to make anyone marry.

**COMPLAINT ¶32:**

During the course of the marriage from approximately 2006 through 2009, Plaintiff Brandenburg's attacker subjected her to a pervasive onslaught of various threats to her life, including but not limited to:

a.      holding a knife to her throat in front of Defendant Makris and several other professors at the Hellenic College-Holy Cross; and

b.      telling Plaintiff Brandenburg that he would "kill [her] and dump [her] body without anyone ever knowing" during a pilgrimage with Defendant Makris and other students of the Hellenic College-Holy Cross, however when Plaintiff Brandenburg brought this to Defendant Makris' attention, Defendant Makris ignored Plaintiff Brandenburg's pleas.

72228318v.7

**ANSWER:**

To the extent the allegations in Paragraph 32 of the Second Amended Complaint are directed to a non-party, no answer is required. Father Makris denies the remaining allegations directed to him in Paragraph 32 of the Second Amended Complaint, and avers further that he was no longer employed at the Hellenic College - Holy Cross after 2006.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the Second Amended Complaint.

**Becoming Nuns: 2009 - 2010**

**COMPLAINT ¶33:**

Towards the end of the Plaintiffs' education at Hellenic College-Holy Cross, Defendant Makris began speaking to the Plaintiffs about becoming nuns and joining a monastery he hoped to found in Calverton, NY.

**ANSWER:**

Father Makris admits that he had conversations with Plaintiffs about becoming nuns towards the end of their education at Hellenic College - Holy Cross, but denies the remaining allegations in Paragraph 33 of the Second Amended Complaint that Father Makris hoped to found a Monastery in Calverton, NY. GOA and Father Makris further aver that the All Saints Greek Orthodox Mission, Calverton existed as early as 1997 and was established and funded by a different Priest.

GOA, Archbishop Demetrios, Bishop Andonios and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 of the Second Amended Complaint.

**COMPLAINT ¶34:**

The relationship between nuns and the Greek Orthodox Archdiocese is that of employee-employer. Upon information and belief, the Greek Orthodox Archdiocese directs its nuns in terms of the daily tasks they must complete, the services they must perform, when and where they can travel. Although the Greek Orthodox Archdiocese pays its male clergy for similar tasks, it does not pay its female laypeople (nuns) for the same.

**ANSWER:**

Defendants deny the allegations in Paragraph 34 of the Second Amended Complaint.

Defendants further aver that to the extent Paragraph 34 relates to Plaintiffs' Fifth and Seventh Causes of Action for gender discrimination and violations of the New York Labor Law, these counts were dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required to those allegations. (ECF No. 28).

**COMPLAINT ¶35:**

Upon information and belief, although the Archdiocese does not pay the Plaintiffs for their services, the Archdiocese employed the Plaintiffs to review accounting books, run Mass services, clean, and maintain gardens and restricted their ability to move between states and even within the state without prior permission.

**ANSWER:**

Defendants admit that GOA did not pay Plaintiffs, and deny the remaining allegations of Paragraph 35 of the Second Amended Complaint.

Defendants aver that to the extent Paragraph 35 relates to Plaintiffs' Fifth and Seventh Causes of Action for gender discrimination and violations of the New York Labor Law, these counts were dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶36:**

Upon information and belief, Defendant Archdiocese does not require nuns, who are female, to take a vow of poverty and does not pay their nuns, including Plaintiffs Kallis and Brandenburg, any money in exchange for their services for Defendants and are instead expected to fund their own employment.

**ANSWER:**

Defendants deny the allegations in Paragraph 36 of the Second Amended Complaint and aver that both Plaintiffs were required to relinquish all worldly goods and vowed non-acquisition of worldly goods for the future.

Defendants further aver that to the extent Paragraph 36 relates to Plaintiffs' Fifth and Seventh Causes of Action for gender discrimination and violations of the New York Labor Law, these counts were dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶37:**

Upon information and belief, Defendant Archdiocese pays its male clergy for services performed during the course of their employment.

**ANSWER:**

Plaintiffs' Fifth and Seventh Causes of Action for gender discrimination and violations of the New York Labor Law were dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶38:**

Plaintiffs Kallis and Brandenburg supported their services to the Archdiocese by selling candles at events organized by parishes affiliated with the Archdiocese before they were told they could no longer participate in retaliation for complaining about Defendant Makris' sexual misconduct and/or harassment.

**ANSWER:**

Defendants admit that, upon information and belief, Plaintiffs sold candles at parish events and deny the remaining allegations in Paragraph 38 of the Second Amended Complaint.

**COMPLAINT ¶39:**

Upon information and belief, in order for women to become nuns in the Greek Orthodox faith, they must become sanctified. For example, a married woman seeking to become a nun must first divorce before applying to the Greek Orthodox Archdiocese to become a nun and seeking their blessing.

**ANSWER:**

Defendants deny the allegations in Paragraph 39 of the Second Amended Complaint.

**COMPLAINT ¶40:**

In or around November 2009, Defendant Makris granted Plaintiff Brandenburg permission to divorce her husband after years of Plaintiff Brandenburg publicly suffering violence at the hands of her husband.

**ANSWER:**

Father Makris denies the allegations in Paragraph 40 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 of the Second Amended Complaint, except Defendants deny that priests are able to grant permission to divorce.

**COMPLAINT ¶41:**

Upon information and belief, Defendant Makris recommended Plaintiff Brandenburg's attacker to the priesthood knowing that he had subjected Plaintiff Brandenburg and at least one other female student at Hellenic College-Holy Cross to sexual, physical, and verbal assaults.

**ANSWER:**

Father Makris denies the allegations in Paragraph 41 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the Second Amended Complaint.

**COMPLAINT ¶42:**

In or around 2010, Plaintiff Brandenburg and Plaintiff Kallis became nuns with the Greek Orthodox Archdiocese of New York and together with Defendant Makris founded the All Saints Monastery located in Calverton, New York.

**ANSWER:**

Defendants deny allegations in Paragraph 42 of the Second Amended Complaint, except

72228318v.7

GOA, Archbishop Demetrios, Bishop Andonios and Father Makris admit that Plaintiffs became nuns within the Greek Orthodox Archdiocese in or around 2010.

**COMPLAINT ¶43:**

In or around 2010, the Defendant Archdiocese appointed Defendant Makris the Spiritual Father of the All Saints Monastery, and as a result he was the Spiritual Father to both Plaintiffs.

**ANSWER:**

GOA and Father Makris admit that Father Makris was the Spiritual Father to both Plaintiffs and that, at one period in time, Father Makris was the Spiritual Father of the All Saints Monastery, and deny the remaining allegations in Paragraph 43 of the Second Amended Complaint.

Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43 of the Second Amended Complaint.

**COMPLAINT ¶44:**

Beginning in or around January 2003 until in or around August 2017, Defendant Makris subjected Plaintiffs Brandenburg and Kallis to various acts of sexual harassment he termed "fatherly affection," including, but not limited to, the following:

a.  Hugging Plaintiff Kallis from behind after graduation so that she could feel his penis against her back through his clothing in or around 2005;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(a) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(a) of the Second Amended Complaint.

b.  Brushing his penis against Plaintiff Brandenburg's hand while they were helping a student move out of the dormitory at Hellenic College-Holy Cross in or around 2006;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(b). GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(b) of the Second Amended Complaint.

    c.    Leaning against Plaintiff Kallis, squeezing her leg and pressing her against a car in an empty parking lot in Queens in March 2017;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(c) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(c) of the Second Amended Complaint.

    d.    Kissing Plaintiff Kallis on her neck and near her lips despite this contact being unwanted and offensive in or around August 2009;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(d) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(d) of the Second Amended Complaint.

    e.    Telling Plaintiffs Kallis and Brandenburg that they would make "cute nuns" over the course of one year leading up to and including April 2010;

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(e) of the Second Amended Complaint, but to the extent a response is required, they are denied.

    f.    Hugging Plaintiffs Kallis and Brandenburg so tightly they had difficulty breathing, their breasts pressed against his chest, and saying "I can't get enough of you," such contact and comments were offensive and unwanted to both Plaintiffs beginning in or around 2007 until in or around 2013;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(f) of the Second Amended

Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge

or information sufficient to form a belief about the truth of the allegations in Paragraph 44(f) of

the Second Amended Complaint.

> g.  Refusing to let Plaintiff Kallis go and saying "no, I'm not done" when she tried to escape his full-body, forceful, offensive, and unwanted hugs in or around late 2009 or early 2010;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(g) of the Second Amended

Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge

or information sufficient to form a belief about the truth of the allegations in Paragraph 44(g) of

the Second Amended Complaint.

> h.  Making eye contact with, winking at, and smirking at Plaintiffs Kallis and Brandenburg while grazing their legs or arms when driving in cars together in Queens, New York, which Plaintiffs Kallis and Brandenburg understood as an expression of his sexual desire for them beginning in or around 2007 leading up until April 2017;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(h) of the Second Amended

Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge

or information sufficient to form a belief about the truth of the allegations in Paragraph 44(h) of

the Second Amended Complaint.

> i.  Stroking the hair, arms, and lower backs of Plaintiffs Kallis and Brandenburg in an inappropriate way during spiritual alone time or when sitting next to each other beginning in or around 2009 up until around April 2010;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(i) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(i) of the Second Amended Complaint.

j.   Telling Plaintiffs Kallis and Brandenburg that they shared a "special connection," implying a romantic or sexual desire rather than simply a spiritual and professional relationship beginning in 2005 up until October 2017, often occurring in New York City between 2006 until October 2017;

**ANSWER:**

Father Makris admits that he told Plaintiffs that he had a special connection with Plaintiffs given that he was their Spiritual Father, but denies the remaining allegations in Paragraph 44(j) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(j) of the Second Amended Complaint.

k.   Reiterating that "even Jesus Christ had his favorites" whenever Plaintiffs Kallis and Brandenburg voiced their discomfort to Defendant Makris in his sexualized behavior towards them beginning in or around 2005 until around October 2017, often occurring in New York City between 2006 and October 2017;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(k) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(k) of the Second Amended Complaint.

l.   Demanding Plaintiff Kallis tell him "I love you" and be more expressive of her love from approximately summer 2008 until around April 2010;

**ANSWER:**

Father Makris denies the allegations in Paragraph 44(l) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(l) of the Second Amended Complaint.

      m.     Telling Plaintiff Kallis that he felt as though he died when she moved out of state following graduation in order to express how much he missed her, signifying a connection that is much closer than the professional relationship between a spiritual father and spiritual child around late 2005 or early 2006; and

**<u>ANSWER</u>:**

Father Makris denies the allegations in Paragraph 44(m) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44 (m) of the Second Amended Complaint.

      n.     Asking to meet Plaintiffs Kallis and Brandenburg to meet him alone, after hours, or after dark so they could spend time alone together without being seen under the guise of offering them spiritual guidance but really to engage in the aforementioned acts of "fatherly affection," which consisted of unwanted and offensive touching, full-body hugs from which Plaintiffs could not move until Defendant Makris let them go, and kissing beginning around 2005 until 2010 for Plaintiff Kallis, and beginning around 2005 until October 2017 for Plaintiff Brandenburg, often occurring in New York City between 2006 and October 2017.

**<u>ANSWER</u>:**

Father Makris denies the allegations in Paragraph 44(n) of the Second Amended Complaint. GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44(n) of the Second Amended Complaint.

72228318v.7

**Sexual Harassment, Gender Discrimination & Retaliation**

**COMPLAINT ¶45:**

On or about March 28, 2017, Defendant Makris apologized to Plaintiffs and ask for their forgiveness for hurting them via email.

**ANSWER:**

Father Makris admits that he apologized to Plaintiffs and denies the remaining allegations in Paragraph 45 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶46:**

On or about October 17, 2017, Defendant Makris again apologized and asked for forgiveness for hurting Plaintiffs via email.

**ANSWER:**

Father Makris admits that he apologized to Plaintiffs and denies the remaining allegations in Paragraph 46 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was

72228318v.7

dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶47:**

On or about October 25, 2017, Plaintiff Brandenburg and Plaintiff Kallis called the Chancellor, Defendant Bishop Andonios in New York City, to inform him of Defendant Makris' misconduct over the years.

**ANSWER:**

GOA and Bishop Andonios deny the allegations in Paragraph 47 of the Complaint.

Archbishop Demetrios, Father Makris and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶48:**

On or about November 27, 2017, Defendant Makris again sent an email to the Plaintiffs asking for forgiveness of any shortcomings.

**ANSWER:**

Father Makris admits that he apologized to Plaintiffs and denies the remaining allegations in Paragraph 48 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶49:**

On or about January 25, 2018, Father Chrysostom Panos, the assistant to Defendant Andonios at the Archdiocese, called Plaintiff Brandenburg from his office at the Archdiocese in New York City, making it clear that he was calling on behalf of Defendant Andonios, yelling at her to "make Sister Theonymphi [Plaintiff Kallis]stop worrying" and saying that he and Defendant Andonios were considering sending them to Greece to become "real nuns" in retaliation for her complaints.

**ANSWER:**

GOA and Bishop Andonios admit that Father Chrysostom Panos spoke with Plaintiff Brandenburg on the phone, and deny the allegations in Paragraph 49 of the Complaint.

Archbishop Demetrios, Father Makris and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶50:**

On or about February 12, 2018, Defendant Andonios called Plaintiff Kallis from his office at the Archdiocese in New York City, yelling and threatening to send Plaintiffs to Greece to learn how to be "real nuns" in retaliation for their complaints.

**ANSWER:**

GOA and Bishop Andonios deny the allegations in Paragraph 50 of the Complaint, except admit that Bishop Andonios discussed with Plaintiff Kallis the possibility of her going to a Monastery in Greece.

Archbishop Demetrios, Father Makris and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶51:**

In early March, 2018, Plaintiffs learned from parishioners and from a non-profit that the Priest told them they could no longer help the Plaintiffs due to their allegations and complaints against Defendant Makris. Upon information and belief, this was done in order to ostracize them from the community and in retaliation

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 51 of the Second Amended Complaint. Defendants deny the allegations in the second sentence of Paragraph 51 of the Second Amended Complaint.

To the extent Plaintiffs' allegations relate to a claim for "Gender Discrimination," Defendants further aver that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

72228318v.7

**COMPLAINT ¶52:**

On or about March 30, 2018, Plaintiffs met with Archbishop Demetrios at the Archdiocese in New York City to follow up on their complaint. During their conversation, Plaintiffs heard Defendant Demetrios tell them the following:

    a.    "In this whole long story, where did you find yourself guilty of anything? Because I hear complaints about the Bishop and the Father. Is there anything in which you are responsible?"

    b.    "I don't want anything negative to be attached to the monastery, for a very simple reason – it's unfair."

    c.    "I don't want you to use the terminology of 'victim.' You are a very decent person, you are not a victim of anything."

    d.    Dismissing their complaints because it was not as bad as the crucifixion.

**ANSWER:**

GOA and Archbishop Demetrios deny the allegations in Paragraph 52 of the Complaint.

Bishop Andonios, Father Makris and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 of the Second Amended Complaint.

**COMPLAINT ¶53:**

On or about April 18, 2018, parishioners at the Holy Cross Parish located in Brooklyn confirmed their parish priest announced the parishioners were not allowed to visit or help the Plaintiffs as retaliation for the Plaintiffs coming forward and complaining about Defendant Makris' sexual harassment of them.

**ANSWER:**

Father Makris denies the allegations in Paragraph 53 of the Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 of the Second Amended Complaint.

**COMPLAINT ¶54:**

On or about April 21, 2018, a Professor at the Hellenic College-Holy Cross wrote to the Plaintiffs to tell them to stop talking about the abuse they suffered at the hands of Defendant Makris and to forgive him for it.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 54 of the Second Amended Complaint, but to the extent a response is

required, Defendants deny the allegations.

**COMPLAINT ¶55:**

Upon information and belief, although the Archdiocese was aware of Plaintiffs' complaints against Defendant Makris, the Defendants refused to investigate the complaints of sexual misconduct and/or harassment.

**ANSWER:**

Defendants deny the allegations in Paragraph 55 of the Second Amended Complaint.

**COMPLAINT ¶56:**

On or about June 25, 2018, a priest in Mattituck, NY called the Plaintiffs to tell them they are no longer welcome at their parish in retaliation for the Plaintiffs having complained about Defendant Makris' sexual misconduct and/or harassment.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 56 of the Second Amended Complaint.

**COMPLAINT ¶57:**

On or around August 14, 2018, Defendant Demetrios informed Plaintiffs Kallis and Brandenburg that Defendant Makris would return to his position as the Priest at the Holy Cross Parish located in Brooklyn.

**ANSWER:**

GOA and Archbishop Demetrios deny the allegations in Paragraph 57 of the Complaint.

Bishop Andonios, Father Makris and Mother Eisodia lack knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 57 of the Second Amended Complaint.

## COMPLAINT ¶58:

In or around September 2018, Defendant Archdiocese held a spiritual court in New York City to allegedly investigate Plaintiff Kallis' and Brandenburg's complaints of sexual harassment against Defendant Makris. Although Plaintiff Kallis was invited to attend spiritual court, she informed the Archdiocese she was out of town and requested the hearing to be rescheduled but never heard back. Plaintiff Brandenburg also requested to be present during the hearing as it concerned her complaints as well, but her calls went unanswered as well.

## ANSWER:

Defendants admit that a Spiritual Court was held in New York, to which Plaintiff Kallis was invited to attend, and deny the remaining allegations in Paragraph 58 of the Second Amended Complaint.

Mother Eisodia lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58 of the Second Amended Complaint.

## COMPLAINT ¶59:

Upon information and belief, the Spiritual Court investigating Defendant Makris was never held. Defendant Archdiocese and Defendant Andonios failed to investigate Plaintiffs Kallis and Brandenburg complaints of sexual misconduct and/or harassment against Defendant Makris and intended to return Defendant Makris to a leadership position within the Greek Orthodox Archdiocese of North America without taking any steps to prevent such conduct from happening again.

## ANSWER:

Defendants deny the allegations in Paragraph 59 of the Second Amended Complaint.

### Defamation & Retaliation

## COMPLAINT ¶60:

On or around November 18, 2018, Plaintiffs were forced to move away from the All Saints Monastery as they had no other choice given the retaliatory environment they had been experiencing for nearly 1 year since complaining and because they learned that Defendant Makris would be reinstated to his former position.

**ANSWER:**

Defendants deny the allegations in Paragraph 60 of the Second Amended Complaint.

**COMPLAINT ¶61:**

Upon information and belief, on or around November 2, 2018, Defendant Eisodia began working at the All Saints Monastery as the Abbess and/or Head Nun.

**ANSWER:**

GOA and Mother Eisodia deny the allegations in Paragraph 61 of the Second Amended Complaint, except admit that Mother Eisodia is currently the Abbess at the All Saints Monastery.

Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61 of the Second Amended Complaint.

**COMPLAINT ¶62:**

Upon information and belief, beginning on or around November 19, 2018, through the present, Defendant Eisodia makes defamatory remarks about Plaintiffs Kallis and Brandenburg to various third parties such as current parishioners, new parishioners who had never met the Plaintiffs, and potential parishioners.

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 62 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 of the Second Amended Complaint.

**COMPLAINT ¶63:**

Upon information and belief, beginning on or around November 19, 2018, until on or around December 31, 2019, Defendant Eisodia has told current parishioners at All Saints Monastery, potential parishioners, and new parishioners who have never met the Plaintiffs, that "the nuns left in the middle of the night and stole a car that belongs to the Monastery," with reckless disregard of the truth of these statements and/or knowing these statements to be untrue.

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 63 of the Second Amended Complaint, but admits that she informed church attendees and financial donors to the Monastery that Plaintiffs had taken the Monastery's vehicle and not yet returned with it.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 of the Second Amended Complaint.

**COMPLAINT ¶64:**

Upon information and belief, beginning in or around March 2019 until on or around December 31, 2019, Defendant Eisodia has told current parishioners at the All Saints Monastery, potential parishioners, and new parishioners who have never met the Plaintiffs, that "I went to the [Riverhead, Suffolk County Police Department] to report the car as stolen and I told them to boot it and to tell the police where the nuns live now that it's stolen," with reckless disregard of the truth of these statements and/or knowing these statements to be untrue.

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 64 of the Second Amended Complaint, except admits that she reported the vehicle owned by the Monastery as stolen after Plaintiffs failed to return with the vehicle, and told church attendees and financial donors the Monastery that she had reported the car as stolen and that it had not been returned.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64 of the Second Amended Complaint.

**COMPLAINT ¶65:**

Upon information and belief, in or around March 2019, the Riverhead, Suffolk County Police Department informed Mother Eisodia that the car was not stolen and instead belonged to Plaintiffs, however Mother Eisodia continued telling current, potential, and new parishioners at the All Saints Monastery that the car was stolen with the knowledge that those statements were untrue.

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 65 of the Second Amended Complaint.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65 of the Second Amended Complaint.

**COMPLAINT ¶66:**

With respect to the car that Defendant Eisodia states the Plaintiffs stole, with the knowledge it was false when making the statement—the car never belonged to the monastery. Instead, it is a vehicle that the Plaintiffs purchased using their personal funds.

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 66 of the Second Amended Complaint and avers that the vehicle in question was registered to the Monastery, the automobile insurance was paid for by Monastery funds, and Plaintiffs owned nothing as they had taken relinquished all worldly goods as Monastic nuns.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66 of the Second Amended Complaint.

**COMPLAINT ¶67:**

Upon information and belief, when Defendant Eisodia reported the vehicle as stolen to the local police department she learned that the vehicle belonged to the Plaintiffs, but continues to make such defamatory statements to current, new, and potential parishioners, knowing these statements to be false.

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 67 of the Second Amended Complaint, except admits that she reported the vehicle as stolen to the police.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67 of the Second Amended Complaint.

**COMPLAINT ¶68:**

As a result of the false and defamatory statements uttered by Defendant Eisodia, Plaintiffs suffered monetary losses as a significant portion of their income came from candle purchases made by their parishioners and visitors to the monastery as well as others in the Greek orthodox community.

**ANSWER:**

Defendants deny the allegations in Paragraph 68 of the Second Amended Complaint.

**COMPLAINT ¶69:**

Upon information and belief, in or around April 2019, Defendant Eisodia called the police on Plaintiff Kallis claiming that she is not allowed in the Convent "because of all the bad things she did."

**ANSWER:**

Mother Eisodia denies the allegations in Paragraph 69 of the Second Amended Complaint, except admits that she called the police after Plaintiff Kallis attempted to disrupt an ongoing Church service at the All Saints Monastery.

GOA, Archbishop Demetrios, Bishop Andonios, and Father Makris lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69 of the Second Amended Complaint.

**FIRST CAUSE OF ACTION**
**Retaliation – All Defendants**

**COMPLAINT ¶70:**

Plaintiffs repeat, reiterate and re-allege each and every allegation set forth in Paragraphs numbered "1" through "64" [sic] as if set forth more fully and at length herein.

**ANSWER:**

Defendants repeat and restate their responses to each and every allegation set forth above in response to Paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

**COMPLAINT ¶71:**

Section 296.1(a) of the New York Human Right Law, N.Y. Exec. Law § 290 et seq. and Title 8 of the New York City Administrative Code, § 8-107, prohibit retaliation against an employee who seeks to assert rights under the Human Rights Law. Defendants were Plaintiffs' employers within the meaning of those laws.

**ANSWER:**

Paragraph 71 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation. Defendants further deny that they were Plaintiffs' employers within the meaning of the NYCHRL, and deny the applicability of the NYC Administrative Code as Plaintiffs did not work or reside in New York City at any time relevant to the allegations in the Second Amended Complaint.

**COMPLAINT ¶72:**

The New York City Human Rights Law is designed to be "construed liberally... regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130(a). Furthermore, in 2016 an amendment to the City Law clarified the law's objective of being "maximally protective of civil rights in all circumstances." N.Y.C. Local L. No. 35 § 1 (2016), https://on.nyc.gov/349Bh1H (emphasis added).

**ANSWER:**

Paragraph 72 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation.

Defendants further deny the applicability of the NYC Administrative Code as Plaintiffs did not work or reside in New York City at any time relevant to the allegations in the Second Amended Complaint.

**COMPLAINT ¶73:**

Plaintiffs complained to Defendants about the mistreatment based on gender, race and sexual harassment inflicted upon them by employees and managers of Defendants. In response, Plaintiffs were subjected to additional mistreatment, all with the knowledge and approval of Defendant for the purpose of punishing them for attempting to assert their rights.

**ANSWER:**

Defendants deny the allegations in Paragraph 73 of the Second Amended Complaint.

**COMPLAINT ¶74:**

Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

**ANSWER:**

Defendants deny the allegations in Paragraph 74 of the Second Amended Complaint.

**COMPLAINT ¶75:**

As a direct and proximate result of Defendant's discriminatory conduct, Plaintiffs suffered adverse employment consequences. Plaintiffs were caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well to endure severe emotional pain and trauma, all to their detriment.

**ANSWER:**

Defendants deny the allegations in Paragraph 75 of the Second Amended Complaint.

**SECOND CAUSE OF ACTION**
**(Sexual Harassment, Quid Pro Quo and Hostile Workplace – Against All Defendants)**

**COMPLAINT ¶76:**

Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth in Paragraphs numbered "1" through "64" [sic] as if set forth more fully and at length herein.

**ANSWER:**

Defendants repeat and restate their responses to each and every allegation set forth above in response to Paragraphs 1 through 75 of the Second Amended Complaint as if fully set forth herein.

**COMPLAINT ¶77:**

Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 et seq., and Title 8 of the New York City Administrative Code, § 8-107, prohibit sexual harassment in employment. Defendants were Plaintiffs' employers within the meaning of those laws.

**ANSWER:**

Paragraph 77 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation. Defendants further deny that they were Plaintiffs' employers within the meaning of the NYCHRL, and deny the applicability of the NYC Administrative Code as Plaintiffs did not work or reside in New York City at any time relevant to the allegations in the Second Amended Complaint.

**COMPLAINT ¶78:**

The New York City Human Rights Law is designed to be "construed liberally... regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130(a). Furthermore, in 2016 an amendment to the City Law clarified the law's objective of being "maximally protective of civil rights in all circumstances." N.Y.C. Local L. No. 35 § 1 (2016), https://on.nyc.gov/349Bh1H (emphasis added).

**ANSWER:**

Paragraph 78 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation.

36

Defendants further deny the applicability of the NYC Administrative Code as Plaintiffs did not work or reside in New York City at any time relevant to the allegations in the Second Amended Complaint.

**COMPLAINT ¶79:**

Plaintiffs deserved to retain their employment and/or accommodation with Defendants, and to receive promotions, and did not do anything to merit discharge or discipline. Nevertheless, Defendants denied Plaintiffs the benefit of employment and/or accommodation, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace and/or accommodation based on sexual harassment that was imposed upon them by the conduct of the defendants' employees and managers, of which they were well aware of and without any non-discriminatory basis therefor.

**ANSWER:**

Defendants deny the allegations in Paragraph 79 of the Second Amended Complaint.

**COMPLAINT ¶80:**

Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

**ANSWER:**

Defendants deny the allegations in Paragraph 80 of the Second Amended Complaint.

**COMPLAINT ¶81:**

Defendant Archdiocese is liable for the acts of its supervisors and managers Archbishop Demetrios, Bishop Andonios, Father Makris, and Mother Eisodia.

**ANSWER:**

Defendants deny the allegations in Paragraph 81 of the Second Amended Complaint.

Mother Eisodia further avers that she was not a member of the GOA when the events complained of by Defendants Archbishop Demetrios, Bishop Andonios and Father Makris allegedly occurred.

**COMPLAINT ¶82:**

As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse employment and/or accommodation consequences. Plaintiffs were caused to

72228318v.7

suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment and/or accommodation as well as to endure severe emotional pain and trauma, all to their detriment.

**ANSWER:**

Defendants deny the allegations in Paragraph 82 of the Second Amended Complaint.

**COMPLAINT ¶83:**

Defendants' actions were knowing, willful and/or malicious.

**ANSWER:**

Defendants deny the allegations in Paragraph 83 of the Second Amended Complaint.

**THIRD CAUSE OF ACTION**
**Sexual Harassment Constructive Discharge – Against Archdiocese, Makris, Andonios, Demetrios**

**COMPLAINT ¶84:**

Plaintiffs repeat, reiterate and re-allege each and every allegation set forth in Paragraphs numbered "1" through "64" [sic] as if set forth more fully and at length herein.

**ANSWER:**

Defendants repeat and restate their responses to each and every allegation set forth above in response to Paragraphs 1 through 83 of the Second Amended Complaint as if fully set forth herein.

**COMPLAINT ¶85:**

Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 et seq. and Title 8 of the New York City Administrative Code, § 8-107 prohibit gender discrimination in employment. Defendants were Plaintiffs' employers within the meaning of those laws.

**ANSWER:**

Paragraph 85 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation. Defendants further deny that they were Plaintiffs' employers within the meaning of the NYCHRL, and deny

the applicability of the NYC Administrative Code as Plaintiffs did not perform work in New York City.

The allegations in Paragraph 85 are directed to other defendants and no responsive pleading is required from Mother Eisodia pursuant to Fed. R. Civ. P. 8(b)(1)(B).

## COMPLAINT ¶86:

The New York City Human Rights Law is designed to be "construed liberally... regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130(a). Furthermore, in 2016 an amendment to the City Law clarified the law's objective of being "maximally protective of civil rights in all circumstances." N.Y.C. Local L. No. 35 § 1 (2016), https://on.nyc.gov/349Bh1H (emphasis added).

## ANSWER:

Paragraph 86 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation. Defendants further deny the applicability of the NYC Administrative Code as Plaintiffs did not work or reside in New York City at any time relevant to the allegations in the Second Amended Complaint.

The allegations in Paragraph 86 are directed to other defendants and no responsive pleading is required from Mother Eisodia pursuant to Fed. R. Civ. P. 8(b)(1)(B).

## COMPLAINT ¶87:

Plaintiffs deserved to retain their employment and/or accommodation with Defendants and did not do anything to merit discharge or discipline. Nevertheless, Defendants denied Plaintiffs the benefit of employment and/or accommodation, including all favorable conditions and emoluments thereof, because of hostility to Plaintiffs based on their gender (female) and without any non-discriminatory basis thereof. Other employees and/or persons who were male were not subject to the same acts of discrimination.

## ANSWER:

Defendants deny the allegations in Paragraph 87 of the Second Amended Complaint.

The allegations in Paragraph 87 are directed to other defendants and no responsive pleading is required from Mother Eisodia pursuant to Fed. R. Civ. P. 8(b)(1)(B).

**COMPLAINT ¶88:**

Defendants' actions were taking under circumstances giving rise to an inference of discrimination.

**ANSWER:**

Defendants deny the allegations in Paragraph 88 of the Second Amended Complaint.

The allegations in Paragraph 88 are directed to other defendants and no responsive pleading is required from Mother Eisodia pursuant to Fed. R. Civ. P. 8(b)(1)(B).

**COMPLAINT ¶89:**

As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse employment and/or accommodation consequences. Plaintiffs were caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to their detriment.

**ANSWER:**

Defendants deny the allegations in Paragraph 89 of the Second Amended Complaint.

The allegations in Paragraph 89 are directed to other defendants and no responsive pleading is required from Mother Eisodia pursuant to Fed. R. Civ. P. 8(b)(1)(B).

**FOURTH CAUSE OF ACTION**
**Defamation – All Plaintiffs against All Defendants**

**COMPLAINT ¶90:**

Plaintiffs repeat, reiterate and re-allege each and every allegation set forth in Paragraphs numbered "1" through "64" [sic] as if set forth more fully and at length herein.

**ANSWER:**

Defendants repeat and restate their responses to each and every allegation set forth above in response to Paragraphs 1 through 89 of the Second Amended Complaint as if fully set forth herein.

**COMPLAINT ¶91:**

Defendants made or caused to be made by their agents and/or legal representatives and published to their parishioners, other members of the religious community, and to local law enforcement, knowingly made false statements about Plaintiffs that were published to third parties without privilege or authorization.

**ANSWER:**

Defendants deny the allegations in Paragraph 91 of the Second Amended Complaint.

**COMPLAINT ¶92:**

In particular, Defendants and/or their agents, employees and/or authorized legal representatives falsely accused Plaintiffs of asserting false claims of sexual harassment and stealing a motor vehicle from the monastery.

**ANSWER:**

Defendants deny the allegations in Paragraph 92 of the Second Amended Complaint.

**COMPLAINT ¶93:**

Such statements were made by Defendants and/or their agents, employees and/or authorized legal representatives and/or spokesperson of Defendants in the course of their duties on their behalf and as such were actionable per se without proof of special damages.

**ANSWER:**

Defendants deny the allegations in Paragraph 93 of the Second Amended Complaint.

**COMPLAINT ¶94:**

Such statements were entirely false and known to Defendants to be false when they were made, and were made solely for purposes of harassment and/or intimidation in order to attempt to induce the Plaintiffs to drop their claims of sexual harassment against Defendants.

**ANSWER:**

Defendants deny the allegations in Paragraph 94 of the Second Amended Complaint.

**COMPLAINT ¶95:**

As a direct and proximate result of Defendants' willful and malicious conduct, Plaintiffs suffered adverse consequences to their personal and professional reputation. Plaintiffs were caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to their detriment.

**ANSWER:**

Defendants deny the allegations in Paragraph 95 of the Second Amended Complaint.

**FIFTH CAUSE OF ACTION**
**Gender Discrimination – Defendant Archdiocese**

**COMPLAINT ¶96:**

Plaintiffs repeat, reiterate and re-allege each and every allegation set forth in Paragraphs numbered "1" through "64" [sic] as if set forth more fully and at length herein.

**ANSWER:**

Defendants repeat and restate their responses to each and every allegation set forth above in response to Paragraphs 1 through 95 of the Second Amended Complaint as if fully set forth herein.

**COMPLAINT ¶97:**

Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 et seq. and Title 8 of the New York City Administrative Code, § 8-107, prohibit gender discrimination in employment. Defendants were Plaintiffs' employers within the meaning of those laws.

**ANSWER:**

GOA denies the allegations in Paragraph 97 of the Second Amended Complaint and avers further that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶98:**

The New York City Human Rights Law is designed to be "construed liberally ... regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed." N.Y.C. Admin. Code § 8-130(a). Furthermore, in 2016 an amendment to the City Law clarified the law's objective of being "maximally protective of civil rights in all circumstances." N.Y.C. Local L. No. 35 § 1 (2016), https://on.nyc.gov/349Bh1H (emphasis added).

**ANSWER:**

GOA denies the allegations in Paragraph 98 of the Second Amended Complaint and avers further that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶99:**

Plaintiffs deserved to retain their employment with Defendants and did not do anything to merit discharge or discipline. Nevertheless, Defendants denied Plaintiffs the benefits of employment, including all favorable conditions and emoluments thereof, because of hostility to Plaintiffs based on their gender (female) and without any non-discriminatory basis thereof. Other employees and persons who were male were not subject to the same acts of discrimination.

**ANSWER:**

GOA denies the allegations in Paragraph 99 of the Second Amended Complaint and avers further that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶100:**

Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

**ANSWER:**

GOA denies the allegations in Paragraph 100 of the Second Amended Complaint and avers further that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**COMPLAINT ¶101:**

As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse employment consequences. Plaintiffs were caused to suffer lost past and future

wages, professional opportunities, other valuable benefits and emoluments of employment, as well as to endure severe emotional pain and trauma, all to their detriment.

**ANSWER:**

GOA denies the allegations in Paragraph 101 of the Second Amended Complaint and avers further that Plaintiffs' Fifth Cause of Action for gender discrimination was dismissed by the Honorable Judge Furman in the Opinion and Order dated June 1, 2021, and therefore, no answer is required. (ECF No. 28).

**SIXTH CAUSE OF ACTION**
**Violations of the New York Civil Rights Law**

**COMPLAINT ¶102:**

Plaintiffs repeat, reiterate and re-allege each and every allegation set forth in Paragraphs numbered "1" through "64" [sic] as if set forth more fully and at length herein.

**ANSWER:**

Defendants repeat and restate their responses to each and every allegation set forth above in response to Paragraphs 1 through 101 of the Second Amended Complaint as if fully set forth herein.

**COMPLAINT ¶103:**

At all times relevant to this action, the New York Civil Rights Law has been in full force and effect and has applied to Defendant's conduct.

**ANSWER:**

Paragraph 103 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation.

**COMPLAINT ¶104:**

The New York Civil Rights Law prohibits discrimination, as contemplated by the NYSHRL. See N.Y. Civ. Rights Law §§ 40-c & 40-d; N.Y. Exec. Law § 296(2); see also Ganzyv. Allen Christian Sch., 995 F. Supp. 340, 350 (E.D.N.Y. 1997) ("Facts sufficient to

sustain a cause of action under New York Executive Law section 296 will support a cause of action under section 40-c of the Civil Rights Law.").

**ANSWER:**

Paragraph 104 of the Second Amended Complaint contains a legal conclusion, as to which no response is required, but to the extent a response is deemed required, Defendants refer the Court to the referenced statute for a full statement of its content and deny any violation.

**COMPLAINT ¶105:**

Based on Defendants' discrimination of Plaintiffs, Defendants are liable "for each and every violation" of "a penalty of not less than one hundred dollars nor more than five hundred dollars." N.Y. Civ. Rights Law § 40-d.

**ANSWER:**

Defendants deny the allegations in Paragraph 105 of the Second Amended Complaint.

**COMPLAINT ¶106:**

"At or before the commencement of [this] action," notice was provided to the New York Attorney General. N.Y. Civ. Rights Law § 40-d.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 106 of the Complaint but aver that, but to the extent a response is required, Defendants deny that Plaintiffs provided notice to satisfy the procedural conditions precedent to asserting their claims, including without limitation the requirement that a copy of their Second Amended Complaint be served upon the New York Attorney General.

## AS TO "PRAYER FOR RELIEF"

Defendants deny that Plaintiffs are entitled to any of the relief sought in the "Wherefore" clauses on pages 21 through 23 of the Second Amended Complaint.

## GENERAL DENIAL

Defendants deny each and every allegation in the Complaint not specifically admitted

72228318v.7

herein.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following affirmative and other defenses without assuming any burden of production or proof that they would not otherwise have. Defendants reserve the right to plead any additional affirmative and other defenses as they become known during the pendency of this action:

### FIRST DEFENSE

Plaintiffs fail to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by First Amendment to the United States Constitution.

### THIRD DEFENSE

Plaintiffs' claims are barred by ministerial exception which precludes judicial inquiry into Plaintiffs' ministerial employment with Defendants and bars their employment claims against Defendants.

### FOURTH DEFENSE

Secular Courts lack subject matter jurisdiction to inquire into the doctrine, discipline and/or worship of the GOA.

### FIFTH DEFENSE

Plaintiffs' claims are barred by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq., because they constitute a substantial burden on the Defendants' exercise of religion that is not justified by any compelling governmental interest and is not the least restrictive means to accomplish any putative governmental interest.

72228318v.7

## SIXTH DEFENSE

Plaintiffs are barred from recovery for some or all of the damages sought because they are not authorized by the New York State Human Rights Law, the Administrative Code of the City of New York, the Constitution of the State or New York and/or the United States Constitution.

## SEVENTH DEFENSE

Plaintiffs Brandenburg and Kallis were not employees of the GOA or the All Saints Monastery, and were not covered by the New York Labor Law.

## EIGHTH DEFENSE

GOA did not know, nor should it have known, of any alleged unlawful sexual harassment, unlawful retaliation or unlawful discrimination against Plaintiffs based upon gender or any other protected category.

## NINTH DEFENSE

GOA neither engaged in the alleged discrimination, harassment, or retaliation against Plaintiffs, nor aided or abetted it, nor authorized, encouraged, condoned, ratified, acquiesced, tolerated, or approved any of the alleged discrimination, harassment, or retaliation against Plaintiffs, and instead prohibited and prohibits any such acts, and any such conduct may not be attributed to GOA through principles of agency, *respondeat superior*, or otherwise.

## TENTH DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations.

## ELEVENTH DEFENSE

Plaintiffs' claims are not actionable because the Second Amended Complaint fails to set forth a *prima facie* case of employment discrimination, retaliation, or harassment.

## TWELFTH DEFENSE

Defendants did not discriminate against Plaintiffs or aid, abet, incite, compel, or coerce such conduct.

## THIRTEENTH DEFENSE

Plaintiffs' sexual harassment claims fail to state a claim for hostile work environment because the alleged statements fail to rise to the level of severe and pervasive.

## FOURTEENTH DEFENSE

Plaintiffs' own culpable conduct caused, in whole or in part, whatever damages they may have suffered.

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred because GOA exercised reasonable care to prevent discrimination, retaliation and harassment and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by GOA, to cooperate fully in GOA's process, or to avoid harm otherwise.

## SIXTEENTH DEFENSE

GOA has complied with all laws and regulations and otherwise satisfied any statutory obligations that it may have toward Plaintiffs under law.

## SEVENTEENTH DEFENSE

GOA at all times, and in all manners, acted in accordance with any and all duties and obligations that it may have had under the laws, regulations, and/or public policy of the State or City of New York or otherwise.

72228318v.7

## EIGHTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of after-acquired evidence.

## NINETEENTH DEFENSE

Plaintiffs' claims and/or requests for relief are barred in whole or in part based on their unclean hands.

## TWENTIETH DEFENSE

Plaintiffs' defamation claims fail because Plaintiffs took a vow of poverty, *see* "General Regulations for the Establishment and Operation of Holy Monasteries in the Archdiocese of America" and therefore could not own any property.

## TWENTY-FIRST DEFENSE

Mother Eisodia's statements were protected by the law enforcement and common-interest privileges.

## TWENTY-SECOND DEFENSE

Mother Eisodia's statements were either fully true or substantially true when said.

## TWENTY-THIRD DEFENSE

Mother Eisodia's statements were merely a statement of opinion.

## TWENTY-FOURTH DEFENSE

Plaintiffs' defamation claim fails because they cannot show that Mother Eisodia's statements were said with malice.

## TWENTY-FIFTH DEFENSE

The events claimed in the Second Amended Complaint allegedly took place during times before Mother Eisodia was a member of the GOA.

## TWENTY-SIXTH DEFENSE

Plaintiffs have failed to satisfy the statutory prerequisites of § 8-502(c) of the Administrative Code of the City of New York for bringing an action under the NYCHRL.

## TWENTY-SEVENTH DEFENSE

Plaintiffs are not entitled to liquidated and/or punitive damages, in that she can neither demonstrate malice, actual participation or reckless indifference by Defendants, nor can she impute liability for punitive damages to Defendants, because of its good faith efforts to comply with applicable law.

## RESERVATION OF RIGHTS

Defendants reserve their rights to amend this Answer and to assert any additional affirmative and/or other defenses that may become available or apparent during the course of the investigation and/or discovery in this case.

## COUNTERCLAIMS

1. Mother Eisodia repeats and realleges each and every previous response to the Second Amended Complaint as though set forth in full herein.

2. Mother Eisodia is the Abbess of the All Saints Monastery. The All Saints Monastery is the legal owner of a Nissan Pathfinder (the "vehicle"). The vehicle was registered to the Monastery, the vehicle was paid for by funds in the Monastery's bank account, the insurance was paid for by funds in the Monastery's bank account, and the gasoline for the vehicle was paid for by funds in the Monastery' bank account.

3. The "General Regulations for the Establishment and Operation of Holy Monasteries in the Greek Orthodox Archdiocese of America" require nuns to relinquish all worldly possessions and vow non accumulation in the future.

4.      Before being tonsured as nuns, Plaintiffs were required to relinquish all worldly possessions and vow non accumulation in the future.

5.      Mother Eisodia arrived at the All Saints Monastery on November 1, 2018.

6.      At that time, it was expected that Plaintiffs would be departing the Monastery on December 31, 2018.

7.      Instead, when Mother Eisodia arrived, Plaintiffs informed her that they would be leaving on November 18, 2018.

8.      On November 13, 2018, Mother Eisodia received a telephone call from an individual who advised that Plaintiffs' home that was being repaired in Missouri was going to be ready soon.

9.      On November 14, 2018, Brandenburg resigned as Abbess of the All Saints Monastery effective on that date.

10.     Mother Eisodia was placed in the role of Abbess and Mother of the All Saints Monastery on November 14, 2018.

11.     On November 14, 2018, Plaintiff Kallis also resigned from her position as a nun at the All Saints Monastery.

12.     On Monday, November 18, 2018, Plaintiffs left the Monastery in the vehicle that belonged to the Monastery.

13.     Upon information and belief, Plaintiffs went to Missouri with the vehicle.

14.     In or around November 2018, Mother Eisodia contacted the Jefferson City, Missouri Police Department to report the vehicle as stolen.

15.     Mother Eisodia was informed by the police that Plaintiff Brandenburg had signed over the title from the vehicle from being in the name of the owner of the vehicle, the Abbess of

the All Saints Monastery, into her own name, Elizabeth Brandenburg, in exchange for a sum of money.

16.    At the time Plaintiff Brandenburg did so, she was no longer Abbess of the All Saints Monastery and had no current role within GOA.

17.    As such, Brandenburg improperly impersonated the Abbess of the All Saints Monastery, who, at that time, was Mother Eisodia, in illegally transferring the title into her own name.

18.    Mother Eisodia did not consent or agree to the transfer of title of the vehicle.

19.    Prior to her resignation as Abbess, Plaintiff Brandenburg also had access to the Monastery's bank accounts.

20.    Following Plaintiff Brandenburg's resignation, Mother Eisodia discovered that Plaintiff Brandenburg had taken money out of the Monastery's bank accounts at both Capital One Bank and Chase Manhattan Bank.

21.    The money in these accounts was deposited with Monastery funds, including donations from financial supporters of the Monastery.

22.    A portion of these funds were donations from financial donors for their burial plots.

23.    Plaintiffs withdrew thousands of dollars from these bank accounts.

24.    Plaintiffs understood that the funds in these accounts did not belong to them and that the funds were donations to the Monastery.

25.    Plaintiffs took the money in bad faith for their own personal use and gain.

26.    Upon information and belief, Plaintiffs continue to have sole access to at least one of the Monastery's bank accounts.

## FIRST COUNTERCLAIM
### (For Conversion Against Plaintiffs, on behalf of Mother Eisodia, Abbess of All Saints Monastery)

27.     Mother Eisodia hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 26, inclusive, as though fully set forth in their entirety in this cause of action.

28.     Plaintiff Brandenburg was provided access to the All Saints Monastery's vehicle during the period of time she served as Abbess.

29.     At all times relevant, the All Saints Monastery was the sole legal owner of the Vehicle outlined herein and entitled to its immediate possession following Brandenburg's resignation as Abbess on November 14, 2018.

30.     Plaintiffs Brandenburg and Kallis knowingly, intentionally, and without permission or authorization, accessed and made use of the Monastery's vehicle by driving it to Missouri.

31.     Mother Eisodia made repeated demands to Plaintiffs for the immediate return of the Vehicle which was registered in the name of the Abbess of the Monastery.

32.     Plaintiffs have refused to return the Vehicle, which was the sole property of the Monastery, despite demands to do so.

33.     Plaintiff Brandenburg fraudulently impersonated the Abbess of the All Saints Monastery when signing over the title to herself.

34.     Plaintiffs now have control over the Vehicle to the exclusion of GOA's rights.

35.     Plaintiffs continue to possess, convert and use of the Monastery's vehicle today.

36.     The All Saints Monastery has been wrongfully deprived of the Vehicle it was entitled to possess following the Plaintiffs' resignation and departure from the Monastery.

37.     Plaintiff Brandenburg was also provided access to the Monastery's bank accounts

during the period of time she served as Abbess in order to pay Monastery bills.

38.     Following their resignation, Plaintiffs knowingly, intentionally, and without permission or authorization, accessed the All Saints Monastery's bank accounts and withdrew funds for her business and personal use.

39.     Upon information and belief, Plaintiffs used these funds to support their candle and other personal care product business, "White Field Farm."

40.     Upon information and belief, Plaintiffs have stolen hundreds of thousands of dollars from the Monastery's bank accounts.

41.     As a direct result of Plaintiffs' unlawful conversion of the vehicle and theft of money from the All Saints Monastery's bank accounts, the All Saints Monastery has been damaged in an amount subject to proof at the time of trial, plus compensatory damages for pain and suffering, punitive and other consequential damages.

## SECOND COUNTERCLAIM
### (For Breach of Fiduciary Duty Against Plaintiff Brandenburg)

42.     Mother Eisodia hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 41, inclusive, as though fully set forth in their entirety in this cause of action.

43.     At all times in her former position as Abbess of the All Saints Monastery, Plaintiff Brandenburg was the highest ranking nun within the All Saints Monastery and had a director type role in the organization.

44.     Plaintiff Brandenburg thus had a fiduciary relationship with the All Saints Monastery in which a high degree of trust was placed in her to handle the Monastery's finances.

45.     Plaintiff Brandenburg owed a fiduciary duty to the All Saints Monastery and to GOA to act in the best interest of the financial donors.

72228318v.7

46.     Plaintiff Brandenburg had a duty not to act in her own self-interest to the All Saints Monastery's detriment.

47.     Plaintiff Brandenburg engaged in egregious misconduct by stealing the All Saints Monastery's vehicle and funds out of the Monastery's bank accounts, neither of which were in her own name or her property.

48.     Plaintiff Brandenburg's conduct was in bad faith and not in the best interest of the All Saints Monastery or its financial donors.

49.     Plaintiff Brandenburg breached her fiduciary duty to the All Saints Monastery.

50.     As a direct result of Plaintiff Brandenburg's breach of fiduciary duty, the All Saints Monastery has been damaged in an amount subject to proof at the time of trial, plus compensatory damages for pain and suffering, punitive and other consequential damages

## <u>RESERVATION OF RIGHTS</u>

Defendants reserve their rights to conform the Counterclaims to the evidence produced in discovered during the course of this litigation, and/or seek to amend the pleading to interpose any other available counterclaims against Plaintiff based on facts learned during this litigation.

**WHEREFORE,** Defendants respectfully request that this Court enter judgment in its favor against Plaintiffs as follows:

1.  dismissing the Second Amended Complaint in its entirety on the merits;

2.  granting the Counterclaims for Conversion Against both Plaintiffs, and Breach of Fiduciary Duty Against Plaintiff Brandenburg;

3.  granting to Defendants the costs and expenses of this action, including attorney's fees; and

4.  awarding Defendants such other and further relief as the Court may deem just and proper.

72228318v.7

Dated:  New York, New York
       July 6, 2021

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Gerald L. Maatman, Jr.*
      Gerald L. Maatman, Jr.
      gmaatman@seyfarth.com
      Karen Bitar
      kbitar@seyfarth.com
      Lisa Savadjian
      lsavadjian@seyfarth.com
      620 Eighth Avenue
      New York, NY 10018
      Telephone: (212) 218-5500
      Facsimile: (212) 218-5526

Attorneys for Defendants
GREEK ORTHODOX ARCHDIOCESE OF
NORTH AMERICA, GERASIMOS MAKRIS
a/k/a FATHER GERASIMOS MAKRIS,
DEMETRIOS TRAKATELLIS a/k/a
ARCHBISHOP DEMETRIOS, ALLEN
PAROPOULOS a/k/a BISHOP ANDONIOS,
AND CHARLENE ASQUITH a/k/a
MOTHER EISODIA

72228318v.7